# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK BECKERMAN, | : | |
|     Plaintiff | : | Civil Action No. 1:06-CV-1334 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| THOMAS J. WEBER, | : | |
| GOLDBERG, KATZMAN & | : | |
| SHIPMAN, P.C., | : | |
| JOHN DOE, and JOHN DOE, | : | |
|     Defendants | : | |

## MEMORANDUM

Pending before the Court is Defendants Goldberg, Katzman & Shipman, P.C. and Thomas Weber, Esq.'s, motion to dismiss Plaintiff's amended complaint. (Doc. No. 14.) The motion is fully briefed and is ripe for disposition. For the reasons that follow, the motion will be granted and Plaintiff's motion to file a sur-reply (Doc. No. 29) will be denied.

**I.    BACKGROUND**[1]

On or about June 23, 1991, Plaintiff won the Pennsylvania State Lottery drawing. As a result, Plaintiff became entitled to a prize of $3,234,000.00, which Plaintiff began receiving in installments of $154,000 per year, less required tax withholdings.

On or about February 25, 1998, Plaintiff entered into a Lottery Price Assignment Agreement with Woodbridge Sterling Capital, LLC ("Woodbridge"), pursuant to which Woodbridge agreed to pay Plaintiff $400,000 on or about June 21, 1998, in consideration for Plaintiff's agreement to assign his rights to receive three future annual lottery payments.

---

[1]    In accordance with the standard of review of a motion to dismiss, the Court will present the facts alleged in the amended complaint in the light most favorable to Plaintiff and draw all reasonable inferences in his favor. The statements in this section reflect neither the findings of the trier of fact nor the opinion of the court as to the truth of Plaintiff's allegations.

Around this time, one or more attorneys of the Harrisburg law firm of Goldberg, Katzman & Shipman, P.C. ("Goldberg Katzman"), were providing legal services to Plaintiff regarding various matters. Plaintiff made Goldberg Katzman aware of the Lottery Prize Assignment Agreement with Woodbridge. According to Plaintiff, the law firm expressed concern that the assignment agreement was not in Plaintiff's best interests. At some unspecified time, Woodbridge assigned its interest in the Lottery Prize Assignment Agreement to Aurora Financial Corporation ("Aurora"). After Plaintiff sought to rescind the assignment, Aurora brought a civil action in the Dauphin County Court of Common Pleas to enforce the terms of the agreement. Plaintiff retained Goldberg Katzman to represent him in that litigation. Plaintiff represents that Goldberg Katzman asserted that Plaintiff was incapable of entering into a valid assignment in 1998 due to certain injuries and substance abuse that caused Plaintiff to be unable to appreciate or understand the terms of the assignment. Plaintiff and Aurora settled their civil action at some point in 1999.

Plaintiff represents generally that "[d]uring the same time frame that Defendant Weber and Defendant Law Firm were representing the Plaintiff to nullify the contract with Woodbridge . . . Defendant Weber and [Goldberg Katzman] were negotiating a contract with Defendant Peachtree" by which Plaintiff would assign three future lottery payments in the total amount of $462,000 to Peachtree Settlement Funding Corporation ("Peachtree")[2] in exchange for Peachtree

---

[2] At various places in the amended complaint, Plaintiff refers to Peachtree as a defendant. Plaintiff did not, however, name Peachtree as a defendant in this case. Instead, Plaintiff has sued an individual employee of Peachtree, whom he has identified only as "John Doe 2." The Court notes that nowhere in the amended complaint does Plaintiff allege that he has been unable to ascertain John Doe 2's identity, and the Court has no information as to whether Plaintiff has taken any steps toward identifying John Doe 2 since initiating this action. Similarly, Plaintiff has never identified the defendant that he has designated only as "John Doe 1," although Plaintiff

paying him $187,250.[3]  (Am. Compl. ¶ 31.)  Plaintiff alleges that at some unspecified time after Goldberg Katzman resolved Plaintiff's dispute with Woodbridge and/or Aurora, Defendant Weber and Goldberg Katzman acted on behalf of both Plaintiff and Peachtree and "had Plaintiff execute a contract with Peachtree" regarding the financing agreement discussed above.  (Id. ¶ 32.)

Plaintiff alleges that sometime thereafter Goldberg Katzman filed a Petition for Judicial Approval of Assignment of Lottery Proceeds in the Dauphin County Court of Common Pleas with respect to the assignment agreement between Plaintiff and Peachtree.  Plaintiff avers that Goldberg Katzman concealed Plaintiff's medical and mental history from the court in connection with seeking court approval of the assignment, and "actively set forth to the Court that Plaintiff fully understood and appreciated the terms of the contract with Defendant Peachtree . . . ."  (Id. ¶ 37.)[4]  Plaintiff avers, without specificity, that at some point during Defendant Weber's

---

does not allege that he cannot identify the employee or that he has taken steps to do so.  See fn. 8, infra.  It should be noted that the 120-day period for serving a summons upon these defendants provided by Rule 4(m) of the Federal Rules of Civil Procedure has expired.

[3]  Goldberg Katzman contests Plaintiff's characterizations of the firm's actions regarding its alleged representation of Peachtree, and maintains that "nothing was done" with respect to the assignment agreement with Peachtree "until two years later," when Plaintiff and Peachtree entered into an assignment agreement dated February 9, 2000.  (See Doc. No. 15, at 5; Doc. No. 13, Ex. 1, Sale Agreement for Lottery Prize Payments of Mark Beckerman dated February 9, 2000.)  The Court also notes, because Plaintiff fails to provide specificity in the amended complaint regarding the actual terms of this agreement, that it appears from the terms of the contract appended to the state court's order authorizing the assignment that Peachtree agreed to pay Plaintiff $187,500 in the year 2000 in exchange for Plaintiff's obligation to assign Peachtree is lottery payments of $154,000 in the years 2009, 2010, and 2011.  Accordingly, Plaintiff received $187,500 immediately, and was not obligated to assign any proceeds to Peachtree until 9, 10, and 11 years later.

[4]  It should again be noted that Peachtree Settlement Funding Corporation is not captioned as a named defendant in this case and has apparently never been served with a summons,

3

representation of Peachtree, he attempted to "recruit" an unnamed attorney to execute a document to indicate that Plaintiff had received legal advice regarding the assignment to Peachtree.

Although the amended complaint fails to provide any mention of it, the Dauphin County Court of Common Pleas convened a hearing on April 5, 2000, to consider whether to approve the assignment. During this hearing, which is a matter of public record, Plaintiff testified that he entered into the assignment agreement voluntarily; that he reaffirmed his intention to go through with the assignment by executing an affidavit attesting to his intention on or about February 11, 2000; that he was of sound mind at the time of the hearing; that he was not under duress at the time he entered into the assignment agreement; and that he had conferred with an attorney regarding the terms of the agreement. (Def. Reply Brief, Ex. 1, Transcript of April 5, 2000, Hearing before the Honorable Scott A. Evans, Dauphin County Court of Common Pleas.) On the same day, Judge Scott A. Evans of the Dauphin County Court of Common Pleas entered an order authorizing the assignment between Plaintiff and Peachtree pursuant to the terms of the agreement.

Defendant alleges that Defendant Weber maintained Plaintiff's legal files and that he "fraudulently concealed documents from the plaintiff which would have alerted the plaintiff to the violations of his first and fourteenth amendment rights, the fraud perpetrated against him as

---

although Plaintiff repeatedly refers to this party as "Defendant Peachtree" throughout the amended complaint and even purports to claim that Peachtree defrauded him and is liable for negligence (Am. Compl., Counts 3 & 4.)

well as the conspiracy to commit fraud." (Am. Compl. ¶¶ 43-44.)[5] Similarly, Plaintiff alleges that Defendant Weber "committed an affirmative and independent act of concealment that would divert or mislead the plaintiff from discovering the injury." (Id. ¶ 45.)[6] Plaintiff avers, again generally, that he requested copies of all documents in his legal file "numerous times" but that Defendant Weber "withheld and concealed" Plaintiff's file. (Id. ¶¶ 47-48.)[7] Plaintiff alleges that he received his legal file "in the Spring of 2006" only after he sought the aid of an unnamed attorney and threatened to contact the office of the United States Attorney General to compel the production. (Id. ¶ 49.) Plaintiff asserts that his claims "could not have accrued until he discovered the evidence when he obtained his file in the Spring of 2006." (Id. ¶ 50.)

## II.   PROCEDURAL HISTORY

Plaintiff commenced this civil litigation by filing a complaint in this Court on July 7, 2006. Plaintiff named as defendants Goldberg Katzman and one of its attorneys, Thomas J. Weber, Esq. Additionally, Plaintiff named two John Doe defendants, one of whom allegedly is employed by the Pennsylvania Lottery Commission and the other allegedly employed by

---

[5] Given the seriousness of this allegation, the Court is constrained to point out that nowhere in the amended complaint does Plaintiff provide any description, much less specificity, regarding the alleged "documents" that Defendant Weber is alleged to have "concealed."

[6] As before, it bears emphasizing that these allegations – essentially charging Defendant Weber with fraud – are pleaded without any specificity whatsoever. It is elemental under the Federal Rules of Civil Procedure that allegations of fraud must be pleaded with specificity. See Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.") The Court notes the averment so as to present a thorough picture of Plaintiff's allegations, but emphasizes that Plaintiff has provided no detail regarding the circumstances of the alleged fraud other than to posit, generally, that it occurred.

[7] Importantly for purposes of this opinion, the Court notes that Plaintiff never alleges when he first began his alleged efforts to obtain copies of his file.

Peachtree.

Goldberg Katzman[8] waived service on September 22, 2006, and moved to dismiss all claims on the same day. (Doc. No. 4.) On October 17, 2006, Plaintiff filed an amended complaint. (Doc. No. 12.) Goldberg Katzman moved to dismiss the amended complaint on October 26, 2006. (Doc. No. 14.) After being granted two extensions, Plaintiff filed a brief in opposition to the motion on November 29, 2006. (Doc. No. 23.) Goldberg Katzman filed a reply brief on December 8, 2006. (Doc. No. 24.) The Court held a hearing on the motion on December 15, 2006. On March 27, 2007, Plaintiff requested leave to file a sur-reply to the motion to dismiss, which Golberg Katzman opposed. (Doc. Nos. 29, 31.)

## III.  STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). Although the court is generally limited in its review to the face of the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d. Cir. 1997); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Although the burden is on the moving party to show that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2007), a plaintiff has an obligation to allege

---

[8] For simplicity, at times during this opinion the Court will refer to Goldberg Katzman and Attorney Weber collectively as "Goldberg Katzman."

facts sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. ___, ___, slip op. at 8-9 (May 21, 2007) (internal citations omitted).  Furthermore, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 16.  A court need not, however, "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Evancho v. Fisher, 423 F.3d 347, 354-55 (3d Cir. 2005).  Finally, when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," Twombly, slip op. at 24, the complaint should be dismissed.

## IV. DISCUSSION

### A. Motion to File Sur-Reply

The Court has considered Plaintiff's motion for leave to file a sur-reply to Defendants' motion to dismiss. (Doc. No. 29); see also LR 7.7 (providing that sur-replies and additional briefing may not be filed without leave of court).  The Court has reviewed the proposed sur-reply and, upon consideration, does not find that the arguments and assertions set forth therein would aid the Court in adjudicating the fully-briefed motion to dismiss.  Accordingly, Plaintiff's request for leave to submit a sur-reply will be denied.

### B. First Amendment

Turning to the merits of the pending motion to dismiss, the Court will first address Plaintiff's claim that Goldberg Katzman and its attorneys allegedly impaired Plaintiff's right of access to the courts, in violation of the First Amendment.  Plaintiff alleges that Goldberg Katzman violated the First Amendment "[b]y presenting misleading information" to the state

court, and also by "refusing to properly convey to the court the nature and extent of the limitations of the Plaintiff," and that the effect of these alleged misstatements or omissions "prevented the Plaintiff from receiving an objective hearing by the court to determine the appropriateness of the assignment." (Am. Compl. ¶ 61.)  Plaintiff claims that this alleged conduct amounts to a violation of the First Amendment.  Even if Plaintiff were to prove that one or more attorneys made false statements to a judicial officer during proceedings before a state court, or that these attorneys failed to disclose certain information regarding Plaintiff's alleged limitations that were known to the attorneys – attorneys who were not representing Plaintiff during such proceedings – such facts would not establish a claim under the First Amendment.  In fact, Plaintiff does not allege that he was actually denied access to the Courts, but rather contends that professional misconduct on the part of Goldberg Katzman and its attorneys somehow prevented him from having a fair hearing.  Plaintiff does not cite to any caselaw that would support a First Amendment claim on such sparse allegations, and the Court is unaware of any precedential authority that would support such a claim on the facts alleged.

   The Supreme Court has explained that right-of-access to the courts claims brought under the First Amendment generally fall into two categories.  The first consists of claims of "systemic official action [that] frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time."  Christopher v. Harbury, 536 U.S. 403, 413 (2002).  The second category is comprised of cases that cannot now be litigated, regardless of what is done in the future.  Id.  The Supreme Court has referred to this latter category of claims as "backward looking," because the claims are predicated on allegations that official action somehow interfered with a plaintiff's right of access to the court, or led to an unjust result in prior litigation.  Id.  In the instant case,

Plaintiff is not claiming that any current official action is precluding him from now seeking access to the courts; instead, he appears to be arguing that Defendants' actions or inactions during the proceedings before the Dauphin County Court of Common Pleas in April 2000 somehow led to an unjust result – the judicial approval of the assignment to Peachtree that Plaintiff requested.

None of Plaintiff's allegations make out a cause of action for denial of access to the courts under either a forward- or backward-looking theory. Plaintiff acknowledges – as he must – that his claim arises out of a judicial proceeding in which he manifestly had access to the courts, as he was present and testified openly before the court that it was his desire that the proposed lottery assignment be judicially approved. Plaintiff has not identified any other cause of action that he wished to bring, but was somehow prevented from bringing, through state action on the part of any of the Defendants. Similarly, Plaintiff has not sufficiently alleged how any statement or omission on the part of any Defendant somehow impaired his right of access to the courts in the April 2000 proceedings. For these reasons alone, the Court finds Plaintiff's First Amendment claim to be insufficient.

Additionally, Plaintiff's First Amendment claim against Goldberg Katzman and Defendant Weber necessarily fails because Plaintiff has failed to allege facts that could allow a fact-finder to conclude that either Goldberg Katzman or Defendant Weber could be considered state actors for purposes of liability under 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

>party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. It is thus axiomatic that in order to be liable under § 1983, a defendant must have been acting under state law with respect to the allegedly unconstitutional conduct. NCAA v. Tarkanian, 488 U.S. 179, 191 (1988) ("When Congress enacted § 1983 as the statutory remedy for violations of the Constitution, it specified that the conduct at issue must have occurred under color of state law; thus liability attaches only to those wrongdoers who carry a badge of authority of a State and represent it in some capacity."). It is true that in some cases, liability under § 1983 may extend to a private actor, but it will only do so where the private actor's conduct can be "fairly attributable to the state." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). While there is no single or uniform test to determine if a private act may be attributable to the state, "a challenged activity may be state action . . . when a private actor operates as a 'willful participant in joint activity with the State or its agents'." Brentwood Academy v. Tennessee Secondary Sch. Athletic. Ass'n, 531 U.S. 288, 296 (2001) (quoting Lugar, 457 U.S. at 941)). Notably for purposes of this case, "[a] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of law' within the meaning of Section 1983." Angelico v. Lehigh Valley Hospital, 184 F.3d 268, 277 (3d Cir. 1999). To constitute state action, therefore, Goldberg Katzman and its attorneys – all of whom are private actors – must be deemed to have engaged in a conspiracy with state actors, or to have been willful participants in a joint activity with them in order to be subjected to suit under 42 U.S.C. § 1983. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

With these considerations in mind, it is clear that the amended complaint falls far short of

sufficiently alleging state action on the part of Goldberg Katzman and Defendant Weber. Nowhere in the amended complaint does Plaintiff charge Goldberg Katzman with conspiring with a state official to violate his federal rights.  At most, Plaintiff has vaguely asserted a supplemental state-law civil conspiracy claim against "all individual defendants" whom he alleges acted in concert to "manipulate the Plaintiff" and to obtain judicial approval of the proposed assignment to Peachtree.  The Court finds this limited allegation insufficient to cause Goldberg Katzman or its attorneys to be considered state actors, or to have undertaken official state action, for purposes of exposing the firm or its attorneys to liability under § 1983.  Not only does Plaintiff fail to allege a civil conspiracy to violate his constitutional rights, but the amended complaint contains virtually no allegations regarding dealings between Goldberg Katzman and a state actor, much less allegations that could even be interpreted liberally to be conspiratorial.  For example, in paragraph 33 of the amended complaint, Plaintiff alleges that Goldberg Katzman advised a John Doe defendant employee of the Pennsylvania Lottery Commission[9] regarding

---

[9] To the Court's knowledge, this John Doe defendant has neither been properly identified nor served with a summons notifying him of this litigation, notwithstanding the fact that this action was commenced in July 2006.  The Court is constrained to note that a plaintiff's use of a John Doe appellation to name an unknown defendant, while permissible in certain limited procedural contexts, is not without limit.  See 2 Moore's Federal Practice § 10.02[2][d][i] (3d ed. 2006) ("A plaintiff using the John Doe appellation must not only allege that the defendant is unknown, but also provide, or attempt to provide, an adequate description or other known information so that service of process can at least be attempted."); see also Keno v. Doe, 74 F.R.D. 587, 588-89 n.2 (D.N.J. 1977), aff'd, 578 F.2d 1374 (3d Cir. 1978) (complaint must state that defendant's name is fictitious and seek to provide a description to permit service of process). Not only does Plaintiff fail to allege that the defendant is unknown, but in fact he identifies John Doe's business address (Am. Compl. ¶ 8) and even alleges that this supposedly unknown defendant was physically present during the April 5, 2000, hearing before the Dauphin County Court of Common Pleas for review and approval of the assignment to Peachtree (Am. Compl. ¶ 39).  With Plaintiff or his counsel in possession of such information, it is difficult to understand why Plaintiff or his attorney found it necessary to resort to use of the John Doe designation for this defendant.  Courts generally will not permit use of a John Doe designation for a defendant

"that status of . . . matters" relating to Plaintiff's legal dispute with Woodbridge/Aurora, which were resolved in 1998.  (Am. Compl. ¶ 33.)  Plaintiff essentially repeats this allegation in paragraph 38 of the Amended Complaint when he avers that Defendant Weber "kept the John Doe 1 informed of the status of [the Woodbridge/Aurora litigation] and the overall resolution and the circumstances regarding the Plaintiff's lack of capacity."  (Am. Compl. ¶ 38.)  Finally, Plaintiff alleges that Defendant John Doe 1 failed to "take any action to prevent" the assignment to Peachtree, notwithstanding that this party allegedly had been "fully aware" that Plaintiff's original assignment to Woodbridge had been unwound due to Plaintiff's "mental and medical condition."[10]  (Am. Compl. ¶ 39.)  In other places, Plaintiff baldly asserts – with no factual allegations – that Defendant John Doe 1 and Defendant Weber "fraudulently arrang[ed]" the assignment to Peachtree, (Am. Compl. ¶ 54), or that all individual defendants "acted in unlawful agreement with one another," (Am. Compl. ¶ 73).  These conclusory assertions, unsupported with even the most general factual detail, are inadequate to charge Defendant Goldberg Katzman or Defendant Weber with acting under color of state law due to their dealings, incidental or otherwise, with an unidentified employee of the Pennsylvania Lottery Commission.

For the foregoing reasons, and for the additional reason discussed below regarding the

---

"if the plaintiff's ignorance of the defendant's true identity is the result of willful neglect or lack of reasonable inquiry.  If reasonable inquiry would have revealed the true identity, a pleading naming John Doe defendants will be dismissed . . . ." 2 Moore's Federal Practice § 10.02[2][d][i] (3d ed. 2006).  See also Fed. R. Civ. P. 11 (imposing obligation on counsel to undertake reasonable inquiry before presenting pleadings to court).

[10]  It bears mention that Plaintiff's original assignment agreement with Woodbridge was apparently unwound or rescinded on the grounds that Plaintiff was suffering from mental or other medical conditions in 1998 that would have made him incompetent to enter into the assignment.  Nowhere in Plaintiff's amended complaint does he allege that he was incompetent for any reason in 2000, when he entered into the assignment agreement with Peachtree.

fact that the two-year statute of limitations applicable to all of Plaintiff's claims expired years ago, Defendants Goldberg Katzman and Weber's motion to dismiss Count II of the amended complaint alleging violation of Plaintiff's right of access to the courts under the First Amendment will be granted.

> B.   State-Law Claims

Goldberg Katzman has also moved to dismiss all claims against the firm and Attorney Weber on the grounds that the two-year statute of limitations applicable to all of Plaintiff's claims has expired. Defendants note that all of the actions of which Plaintiff complains are alleged to have taken place in the year 2000, and claims for injuries attributable to these alleged acts are now untimely. Although he does not explicitly address the issue in the amended complaint, in his brief in opposition Plaintiff suggests that application of the "discovery rule" mandates that the statute of limitations period did not begin running until 2006, when he was provided with a copy of his legal file and only then discovered that he had been injured by Defendants' conduct. The Court finds Plaintiff's argument unpersuasive.

All of Plaintiff's state-law claims are subject to a two-year statute of limitations period. 42 Pa. Cons. Stat. § 5524.[11]  Generally, the statute of limitations for a tort action under Pennsylvania law begins to accrue when the injury is sustained. Moyer v. United Dominion Indus., 473 F.3d 532, 547 (3d Cir. 2007) (citing Debiec v. Cabot Corp., 352 F.3d 117, 128-29 (3d

---

[11] Civil rights claims under 42 U.S.C. § 1983 also are subject to a two-year statute of limitations, as "[i]n actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury." Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (citing Wilson v. Garcia, 471 U.S. 261, 276-78 (1985)).  Accordingly, Plaintiff's First Amendment claim alleged in Count 2 also is subject to a two-year limitations period and the statute-of-limitations analysis set forth herein applies to all of Plaintiff's claims.

Cir. 2003); see also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994) ("As a general rule, the statute of limitations begins to run when the plaintiff's cause of action accrues . . . the accrual date is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff discovers that he or she has been injured."); Podobnik v. United States Postal Serv., 409 F.3d 584, 590 (3d Cir. 2005) ("the accrual date is [not the date on which] a plaintiff learns he has been the victim of a legal wrong.  Rather, a claim accrues as soon as a potential plaintiff either is aware, or should be aware after a sufficient degree of diligence, of the existence and source of an actual injury.").

The "discovery rule" is an exception to this principle, which applies where "a party, through no fault of his or her own, does not discover [his or] her injury until after the statute of limitations normally would have run."  Moyer, 473 F.3d at 547 (quoting Debiec, 352 F.3d at 129).  Where the discovery rule applies, the limitations period begins to run when "the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct."  Id.  The party claiming the benefit of the discovery rule has the burden of demonstrating that it applies, and must establish that he exercised reasonable diligence in investigating the claimed injury, with "reasonableness" considered under an objective standard.  Id.  The issue of reasonable diligence is usually for the jury to decide, but "where the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law."  Id. (quoting Cochran v. GAF Corp., 666 A.2d 245, 248 (Pa. 1995)).

With these standards in mind, the Court notes that it is difficult, after reading the entirety of the amended complaint, to discern exactly what Plaintiff claims his injury to have been that

14

resulted from his receipt of one year's lottery payment in the year 2000 in exchange for an agreement to assign three future payments to Peachtree nine, ten, and eleven years later. Furthermore, assuming that Plaintiff has articulated a claim for one or more injuries stemming from this assignment agreement or Defendants' involvement in this transaction, the Court cannot perceive how Plaintiff could have remained unaware of his injury at the time of the assignment.[12] For this reason alone, the Court would conclude that the statute of limitations expired years before this lawsuit commenced – a full six years after the assignment was authorized.

Moreover, before a court can find that the discovery rule applies in a given case, the plaintiff must have exercised a reasonable degree of diligence in becoming aware of his injury. In this case, Plaintiff has failed to allege any facts that could allow a fact finder to conclude that he had exercised diligence in attempting to learn of his claimed injuries. In his original complaint, Plaintiff entirely ignored the statute of limitations problem that was presented by bringing an action six years after the alleged events occurred that he claims gave rise to his claims. Upon reviewing Goldberg Katzman's first motion to dismiss in which the firm argued that the statute of limitations had run on all of Plaintiff's claims, Plaintiff submitted an amended

---

[12] Plaintiff suggests that he was under the impression that Goldberg Katzman breached a duty of loyalty to him through its representation of Peachtree during the assignment proceedings, although it is clear that Goldberg Katzman was acting as counsel to Peachtree with respect to this transaction. (See Doc. No. 24, Ex. 2, Transcript of April 5, 2000 hearing, identifying Steve Grubb, Esq., of Goldberg Katzman as Peachtree's counsel.) Additionally, although the Court does not rely upon the existence of unofficial documents outside of the amended complaint in deciding the pending motion, the Court notes that Goldberg Katzman has produced a countersigned waiver letter dated February 9, 2000, in which Plaintiff and Peachtree acknowledged their awareness that Goldberg Katzman had formerly provided legal services to both Plaintiff and Peachtree; that both parties waived any conflict with respect to prior representation; and that Goldberg Katzman was not providing legal services to Plaintiff with respect to the assignment to Peachtree. (Doc. No. 24, Ex. 2, Letter Agreement Dated Feb. 9, 2000.)

complaint in which he apparently perceived this problem, but he nevertheless failed to articulate any facts that could demonstrate that he had, in fact, exercised reasonable diligence in discovering his alleged injuries.  Instead, Plaintiff leveled a slew of conclusory allegations that Defendant Weber somehow fraudulently concealed the fact of Plaintiff's injuries.  Stating allegations of fraud in such a general fashion does not comply with the elevated pleading standards imposed by Rule 9(b) of the Federal Rules of Civil Procedure.  More importantly, Plaintiff never alleges that he actually exercised any diligence in discovering his alleged injury until 2006 and he never alleges what he discovered upon review of the file that was not already known to him.  Although the Court reads the allegations in the light most favorable to Plaintiff, in this case there are simply no allegations from which a fact finder could even reasonably infer that Plaintiff had exercised the diligence required for application of the discovery rule.[13]

Accordingly, having reviewed the allegations in the amended complaint, the Court finds that Plaintiff (1) knew or should have known of the injury of which he now complains in the year 2000, the year in which the state court approved the assignment to Peachtree; (2) has failed to allege precisely what injury or injuries he first discovered in 2006, six years after the events about which he complains – and in which he was an active participant – took place; and (3) has failed to allege facts that he exercised reasonable diligence at any time prior to 2006 in an effort

---

[13] Although Plaintiff does not specifically assert that principles of equitable tolling should apply to save his claims from the statute of limitations, the Court notes that there are insufficient allegations that would cause the Court to find that equitable tolling would be applicable in this case.  As a rule, equitable tolling "should be applied sparingly."  Podobnik, 409 F.3d at 591 (citations and quotations omitted).  Generally, equitable tolling may be found appropriate where: (1) a defendant actively misleads a plaintiff regarding her cause of action; (2) a plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) a plaintiff has timely asserted her claims, but in the wrong forum.  Lake v. Arnold, 232 F.3d 360, 370 n.9 (3d Cir. 2000).  None of these situations is presented in this case.

to learn of his purported injury. Accordingly, the Court concludes that the statute of limitations applicable to Plaintiff's claims against Goldberg Katzman and Attorney Weber has expired and the Court can perceive no basis to find that the discovery rule applies in this case.

## V.  CONCLUSION

For the reasons set forth in this memorandum, the Court finds that Plaintiff has failed to state a claim against Defendants Goldberg Katzman and Thomas Weber for violation of his right of access to the courts under the First Amendment, and finds further that the statute of limitations applicable to all of Plaintiff's claims expired prior to Plaintiff bringing this case. Finally, the Court finds that the discovery rule is not applicable to extend the two-year statute of limitations period and there is no basis to apply equitable tolling. For all of these reasons, Defendants' motion to dismiss the amended complaint will be granted. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK BECKERMAN,** | : | |
|     Plaintiff | : | Civil Action No. 1:06-CV-1334 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **THOMAS J. WEBER,** | : | |
| **GOLDBERG, KATZMAN &** | : | |
| **SHIPMAN, P.C.,** | : | |
| **JOHN DOE, and JOHN DOE,** | : | |
|     Defendant | : | |

## ORDER

**AND NOW**, this 9th day of August 2007, for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants Goldberg Katzman's and Thomas Weber's motion to dismiss the amended complaint (Doc. No. 14) is **GRANTED**. Plaintiff's claims against Defendants Goldberg Katzman and Thomas Weber, Esq., are **DISMISSED**.

2. Plaintiff's motion to file a sur-reply (Doc. No. 29) is **DENIED**.


                                                  S/ Yvette Kane
                                                Yvette Kane, Chief Judge
                                                United States District Court
                                                Middle District of Pennsylvania